The next case today is Scott Knous v. Broadridge Financial Solutions, Inc., Appeal No. 20-1617. Attorney Creed, please introduce yourself on the record. Good morning. May it please the court, Alan Creed for the appellant, Scott Knous. Judge Lynch, if I may, I'd like to reserve two minutes for rebuttal. You may have it. Thank you. Broadridge Financial Solutions employed my client as a vice president of product management. On May 17, 2019, my client was told he was being let go and would receive quote non-working notice through the next Friday, May 24th, told to do no more work for Broadridge, told to return his cell phone and laptop, told to return his key card to clean out his desk and to leave the building. My client did all those things on May 17th and never did any further work for Broadridge. My client received no pay on May 17th. On May 24th, my client was paid his accrued wages, vacation pay, and the non-working notice for May 17th through 24th. Broadridge's actions violate the Wage Act, Chapter 149, Section 148, which requires that employees receive their accrued wages and vacation pay on the day of their discharge from employment. The Supreme Judicial Court's decision in Dixon v. City of Malden makes clear a judgment should have entered in my client's favor. In Dixon, the plaintiff received a letter in which he was instructed he was relieved of all his responsibilities, was told to turn in his documents immediately, and to contact Human Resources for an exit interview. The plaintiff in Dixon was not paid $13,000 in accumulated vacation pay on the day of his discharge from employment. Nevertheless, for the next three months, Dixon continued to receive uninterrupted payroll checks and benefits. These post-discharge payments totaled $19,000, more money than Dixon's accumulated vacation pay. The SJC, however, found that a Wage Act violation had occurred because the plaintiff had not been paid his vacation on the day of his discharge from employment, and the SJC found the post-discharge payments merely to be, quote, gratuitous salary or, quote, gratuitous severance payments. Dixon establishes at least three propositions. One, an employee can be discharged even though he continues to receive uninterrupted pay and benefits. Two, a Wage Act claim will lie even where a plaintiff receives uninterrupted post-discharge payments if he has not paid his accrued wages, including vacation time, on the day of discharge. Three, if post-discharge payments are not labeled wages or vacation, such post-discharge payments are gratuitous. The defendant appears only to reject the third proposition inasmuch as it contends the non-working notice pay for May 17th through 24th was, in fact, wages. The district court should have simply applied Dixon and entered summary judgment for Mr. Knauss. Broderidge argues that Mr. Knauss was not discharged until May 24th. Broderidge contends that because Mr. Knauss was paid on May 24th, there was no violation of the Wage Act. Ultimately, any argument that the May 24th payment satisfied the Wage Act fails for at least four different reasons. First, a May 24th day of discharge assigns absolutely no significance to any of the tangible facts, such as the taking away of Knauss' company devices or the cleaning out of his desk. Indeed, Broderidge admits as much in his brief, saying there is, quote, no legal significance, unquote, to any such facts. Let me ask you about that. It seems rather odd that an employer couldn't go to an employee and say, look, go to them on day one, we'll call it, and say, look, we're going to let you go, but we know this is a surprise. Termination won't occur until a week from now, but you don't have to do any work at all in the meantime. In fact, we don't even want you here. Go out, do other stuff, but we'll still pay you through next Friday. That seems much more humane than going up and telling them on day one, you're gone, here's your last pay, get out of here. Why can't an employer do the first, and we would deem the termination or discharge to be on day eight, when they told them it would be his last day? Well, if there were a different set of facts, Your Honor, where the employee was kept on and doing work for the employer, rendering himself available to the employer. Why do you say he has to do some work? They've effectively just given him an extra week of vacation. Yes, Your Honor. That brings me to another point, that the statutory language here in Chapter 149, Section 148 is discharged from discharging a firearm, discharging a patient from a hospital, it involves a sending out, as Mr. Nowes was sent out of the building on May 17th. However, even if it were equated to a discharge, were equated to termination, under the surplusage canon, the court must give meaning to the words from employment. And Chapter 149, Section 1 defines employment as carrying on a occupation or keeping an employee in the service. So, within the statutory meaning, unless an employee is being, to say to an employee, you know, you're still an employee, you're not doing anything, we're done with you, we're never going to have you do any more work, that employee has been discharged, which is, of course, consistent with what... Mr. Creed, I want to follow up on Judge Kayada's comments. Seems to me your reading of the statute is directly contrary to what the legislature was intending to accomplish. The legislature was trying to avoid people being cheated out of vacation pay by mugging with the termination date. That is not at all the situation we have here. Your client was paid his vacation pay. The case you rely on was factually very different, just as the district court said, and did involve an effort to label payments as vacation pay, which were not in fact vacation pay. And so, the SJC was concerned about the cheating of people to stop them from getting vacation pay that they were due. Instead, your argument would lead to employers not doing exactly what Judge Kayada said, which is, your termination date is in the future, in one week or two weeks, we're going to pay you during that time period. We are going to pay you your salary and your vacation pay through that time period. You would discourage employers from doing that by saying, even if you do that, you are subject to this statute and to treble damages. How could the legislature possibly have intended the result that you are arguing for? Well, portions of the Wage Act are concerned with the unreasonable, quote-unquote, detention of wages. Here, the statutory language, which this court in Wallace said was apodictic, is shall pay on the day of discharge from employment. So, to pay wages... And that was done here. A payment was made on the date that the employer deemed and told him was the date of termination. But you want to hold employers liable under treble damages, regardless of that fact. I think the only way, and indeed, the district court, without bringing on all the baggage of employment at will that was invoked by defendant, the only way to reach the conclusion that Mr. Knauss was discharged, in fact, on May 24th, is to say that the employer has this unilateral right to dictate or designate any arbitrary... Time has expired. How does that hurt the employee? I mean, he would have been even better if they said one month. We'll go now, but we'll give you an extra month. Or if they said 50 years, that would be the best thing for him. Perhaps not, Your Honor. Certainly, in cases where employees have accumulated a substantial amount of vacation time, as in Dixon, it could just simply be a stratagem of employers to delay paying the substantial amount of accumulated vacation time. Okay. But aren't you essentially saying that this would have been a completely different scenario if they had taken away all his devices, told him he didn't need to work, but had him report there every day on his usual hours and put him in an office by himself to just sit there with the 24th being his termination date? Isn't that essentially what you're asking us to find, is that the fact that they didn't make him go that week is the driving decider? Well, they had two options, Your Honor. One is they could have discharged him. May 17 said, leave, take all your devices, and here's your check. We're paying you. And their other option would have been to say, your termination is effective the next week. You know, we're giving you notice, but you're on call. You know, you don't have to report to work. Something like that would have also perhaps been an option. All right. Thank you. We'll hear from your opponent. You have reserved some time. Attorney Creed, you can mute your device at this time, audio and video. And Attorney Blank, if you could please introduce yourself on the record. Thank you. May it please the Court. My name is Shira Blank, appearing on behalf of Apelli  This case presents both a straightforward application of the Wage Act and a scenario that arises nearly every day. And District Judge Sorokin recognized both of these things in allowing Broadridge's motion for summary judgment and denying Mr. Naus's. And we respectfully request that the decision be affirmed. The questions that you asked of Appellant go to the very heart of this matter, and the fact that he continues to be unable to articulate why an employer cannot give an at-will employee advance notice of a termination and pay them through that time is very troubling. Mr. Naus was an at-will employee. He was given advance notice that his employment would terminate in a week on May 24th, and that he would be paid up through and including that date. And on May 24th, the same day he was told he would be paid, Broadridge paid him everything owed to him, the exact amount owed to him. And a review of his last paycheck demonstrates that he got car allowance, 401k, life insurance, health and dental and vision benefits, FSA. That's the entirety of what happened here. And importantly, almost everything I said is undisputed. As we mentioned, this scenario happens every day in various workplaces, and it actually also happened in Dixon, the only case that Mr. Naus continues to rely on. In that case, the plaintiff also got notice of an impending termination. The issue was that he wasn't paid his vacation pay on the date that they actually told him he was discharged and notified him of that in writing. There's no dispute that the employer in Dixon providing the plaintiff with notice of an impending termination didn't trigger any obligation for the Wage Act. Appellate is trying to turn this routine occurrence into something it's not in order to justify his claim that a legal violation took place and ask for treble damages. And he's wrong on all counts. And District Judge Sorokin recognized all of these things. But the complications stemming from Mr. Naus's interpretations, and your honors recognize those, they go further. Adopting his reading of the statute would result in a holding that prohibits companies from giving employees advance notice of their termination and paying them in the interim. It would mean that an employer cannot do what your honors characterize as the humane thing. They can't tell an employee you're being fired, but we're retaining you as an employee for a few weeks so that you can look for a job, so that you can continue to collect a paycheck, so that you can get health benefits for your family for a few weeks. It would effectively change the definition of the term employee. And it would mean that employees who have been furloughed or told not to work, but kept on payroll because of a lockdown due to a global pandemic, not only have viable actions under the Wage Act, but that they can initiate those actions while still earning wages as employees, which is exactly what Mr. Naus did. If your honors accept Mr. Naus's argument, then every employee can now say, I believe I was fired on this day and now have a claim for treble damages. It would also uproot the tenets of employment at will as we know it simply because Mr. Naus appears to take issue with that concept. At will employment means that either party can terminate the relationship. An employer can say, you're employed. I'm going to continue to pay you, but please stay home. Don't do work. Do whatever you want during that time. Surf the internet, look at the wall, listen to the birds. If the employee doesn't like it, they can resign. That's what employment at will is. Ultimately, neither the facts nor the legal concepts in this matter are truly in dispute. It's undisputed that the Wage Act's purpose is to prevent employers from unlawfully withholding an employee's wages on the dates that they're discharged, but the purpose is not to prevent employers from doing the courteous thing and providing employees with advanced notice of their termination and giving them some dignity and respect during an awful process, rather than throwing them out on the street and telling them you're fired, get out, you're off payroll. Or to punish an employer for doing this. Mr. Nowes has argued to this court that the day of his discharge should be deemed to be the date he was notified that he would be let go. The statute says any employee discharged from such employment shall be paid in full on the day of his discharge. In this situation, the statute contemplates that the employer is deciding to discharge the employee and by extension, the employer would determine when the employee is being discharged. And Mr. Nowes makes a lot of the statute using the term discharge rather than termination. Your honors, we can all agree that the terms discharge and termination are used interchangeably all the time. And for Mr. Nowes to argue that there's a difference between them is mere wordplay that does not go to what is intended by the statute. And yes, Broadridge did take Mr. Nowes' laptop. It did tell him to return his badge. There's nothing wrong with an employer telling an employee who it knows they will be parting ways with, and particularly one holding a high position like Mr. Nowes was. He was leading a group and making $250,000 a year to turn in his company documents so that he doesn't have access to confidential information and its trade secrets anymore. The material facts are undisputed here as well. Five minutes remaining. Thank you. Mr. Nowes was an at-will employee. He agreed when Broadridge hired him that either side could And as Broadridge is preparing to fire him and the other employees who are going to be impacted by this reorganization, there are contemporaneous emails which said that they would ultimately all be fired on May 24th, but they would be given a week's notice. On May 17th, Broadridge notifies Mr. Nowes that it's eliminating his position effective May 24th, one week later, and that he would remain on its benefit plan and be paid through that date. Mr. Nowes admits that he was told that he would be paid through that date. He's given a written severance agreement which says no matter whether or not you sign this, your employment is ending May 24th, and if he wanted to sign it, he would have gotten 18 weeks of severance. And notably, a review of the severance agreement shows that the 18 weeks of severance started on May 24th. If his last date of employment was really May 17th, Broadridge would not have skipped that week. This is contemporaneous evidence of what happened, and it reaffirms what Mr. Nowes was told orally, and on May 24th, 2019, he's paid everything that is owed to him. This is also undisputed. As of that date, he's not owed anything further. And in all of this, in this commonplace situation, the only thing we have to support Mr. Nowes' position is his unsubstantiated belief, and belief is his word, that this payment should be construed to be gratuitous, which is also his every way inconsistent with its plan. And so to the extent that Mr. Nowes may have allegedly misinterpreted something or misunderstood something at the May 17th meeting, that misinterpretation is shown to be demonstrably false in the face of the severance agreement, his last paycheck on May 24th, and this mound of contemporaneous evidence. This is exactly the type of case that summary judgment is designed to dispose of, and we respectfully submit that Thank you. Thank you. Thank you, Attorney Blank. You can mute yourself, your audio and video at this time. Attorney Creed, please unmute your device and reintroduce yourself on the record. You have two minutes of rebuttal. Allen Creed for Scott Nowes. Broadridge argues that Mr. Nowes was told that May 24th would be his effective date of termination. However, that's a disputed fact here. Mr. Nowes denies that he was ever told that May 24th would be his effective date of termination. In fact, Mr. Nowes contends he was told by his general manager, Brian Crowley, that he was being terminated immediately. Now, under the defendant's theory where effective date of termination can be equated with day of discharge from employment, that should have precluded summary judgment from being entered in for the defendant. However, it would not be a bar to summary judgment entering for Mr. Nowes because Mr. Nowes' position is that effective date of termination is a distinct concept from day of discharge from employment. Could you point us to any affidavit or deposition testimony by your client saying what you just said? Yes, Your Honor, certainly. On page 191 of the joint appendix, which is the combined statement of facts, paragraph 44, which cites to Mr. Nowes' response to defendant's request for admission number two, wherein Mr. Nowes says that he was But a denial of a request to admit is not an admissible piece of evidence. You need an affidavit or a deposition testimony. Mr. Nowes' affidavit is also there, Your Honor, and I would submit that the request for admission as a statement under oath is an inadequate pleading for summary judgment. Counsel, was there an affidavit from your client in which he says, I was told my termination date was May 17th? No, Your Honor. All right. So, how is there any evidence of any dispute of fact, whether or not we would consider it a material dispute of fact? I mean, it's disputed in the record, Your Honor. As I'm sorry, you know, you have to have evidence, and your client apparently did not want to perjure himself by putting in an affidavit making a statement like that. Your Honor, my client would not be perjuring himself by making that statement. I beg your pardon. Where in the record is there any support other than your denial of counsel's denial of a request to admit? As I said, Your Honor, the only paragraph 44 to the response to the disputing the statement of facts. And all of the documents in the case list a May 24th date. Isn't that correct? Well, Your Honor, that's not quite correct. There's two contemporaneous documents. There's a severance agreement, which identifies May 24th as the quote-unquote termination date, but also says as of that date, the employee will cease performing the employment duties and responsibilities. In fact, as we know, he ceased performing. What's the other document? Would be the attachment to that severance agreement, which is a document from the older, required by the Older Workers' Benefit Protection Act, which says on or about May 24th, 2019, which of course on or about could be May 17th. All right. Thank you very much. Thank you. Okay. Your time is up. Thanks. Thank you. That concludes argument in this case. Attorney Creed and Attorney Blank, you should disconnect from the hearing at this time.